## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 16-cv-60959-BLOOM/Valle

MARC ANTHONY WILLIS,

      Plaintiff,

v.

CITY OF CORAL SPRINGS,
and NICOLE HILDEBRANDT,

      Defendants.

_____/

### ORDER

**THIS CAUSE** is before the Court upon two Motions filed by Defendants City of Coral Springs ("the City") and City of Coral Springs Police Officer Nicole Hildebrandt ("Officer Hildebrandt," together with the City, "Defendants"), respectively, ECF Nos. [5], [11] (together, the "Motions"), which seek to dismiss counts in Plaintiff Marc Anthony Willis' ("Plaintiff") Complaint, ECF No. [1] ("Complaint"), pursuant to Fed. R. Civ. P. 12(b)(6).  The Court has carefully reviewed the Motions, all supporting and opposing submissions, the record, and applicable law.  For the reasons set forth below, the Motions are granted.

### I.  Background

This controversy arises from events that occurred on the ill-fated night of April 29, 2013.  Willis claims that Officer Hildebrandt inexplicably became aggressive and arrested him, utilizing excessive force in the process.  Specifically, the incident unfolded around 7:00 p.m., when Officer Hildebrandt, who was on duty and uniformed, traveled to Plaintiff's residence in Coral Springs to address "alleged noise complaints."  Compl. ¶¶ 21-22.  Upon her arrival, she encountered Willis, who was "working on his vehicle" that was "legally parked in front of

Plaintiff's home." *Id.* ¶¶ 23-24, 51.  An altercation involving the noise level of Willis' car radio ensued.

Officer Hildebrandt ordered him to turn down the volume of the radio, and when Willis complied, Officer Hildebrandt told him that he did not turn it down "low enough." *Id.* ¶¶ 25-26. So, Willis turned the radio off, prompting Officer Hildebrandt to ask, "what the hell is your problem[?]" *Id.* ¶¶ 27-28.  "Willis stated that he did not have a problem and attempted to explain to [Officer] Hildebrandt what he was doing with his vehicle." *Id.* ¶ 29.  Officer Hildebrandt then became "belligerent," "suggesting that [] Willis had no right to be in the neighborhood." *Id.* ¶ 30.  Eventually, the Defendant told Willis to turn around and "get up against his vehicle" and asked if he had identification. *Id.* ¶¶ 31-32.  Plaintiff advised Officer Hildebrandt "that his driver's license was in his house and asked if he could get the driver's license," which she "refused to allow." *Id.* ¶¶ 33-35.  "Willis continued to completely comply with Officer Hildebrandt's commands[,] despite [her] refusal to allow Plaintiff to get his driver's license," and "continued to explain . . . why he was there." *Id.* ¶¶ 36-37.  This only "further enraged Defendant," who then told Willis "to place his hands behind his back." *Id.* ¶¶ 38-39.  Once he complied, Officer "Hildebrandt[] placed hand cuffs on Plaintiff." *Id.* ¶¶ 40-41.  "[D]uring this process[, Officer] Hildebrandt's aggression escalated to an outright physical attack on the Plaintiff, including but not limited to the twisting of Plaintiff's arm and throwing the Plaintiff hard against his vehicle." *Id.* ¶ 42.  Officer "Hildebrandt then took Plaintiff into custody and the Plaintiff was arrested." *Id.* ¶ 43.

Plaintiff alleges that Officer Hildebrandt had no justification for asking him to produce identification while he was standing on his own property, nor for aggressively pushing and striking him against his vehicle. *Id.* ¶¶ 44-46.  Furthermore, Plaintiff claims that Officer

Hildebrandt "did not, at any time, have probable cause to arrest" him "or reasonable suspicion to believe that Plaintiff had violated any state or local laws or any traffic ordinances." *Id.* ¶¶ 47, 58. At no time did Plaintiff "pose any threat to Defendant" or "display a furtive appearance or suspicious conduct." *Id.* ¶¶ 56-57. Nevertheless, based on the information that the Defendant provided, "the Broward County State Attorney's Office filed a one-Count Information against the Plaintiff for resisting, obstructing a police officer without violence F.S. 843.02." *Id.* ¶ 48. All charges against Willis were dropped on February 26, 2014. *Id.* ¶ 50.[1]

Willis alleges that Officer Hildebrandt was negligent and reckless in these actions, which "endangered [his] life" and caused him to suffer severe mental and physical injuries. *Id.* ¶¶ 52-55, 62-64. He further submits that the Defendant "had an unjustified belief that the Plaintiff did not belong in the neighborhood because of his race," which motivated her improper conduct. *Id.* ¶¶ 60-61. Accordingly, Plaintiff brings the following ten counts for relief: (I) violation of 42 U.S.C. § 1983 against Officer Hildebrandt generally; (II) deprivation of civil rights against the City; (III) federal claim for false arrest/imprisonment against Officer Hildebrandt; (IV) federal claim for excessive use of force against Officer Hildebrandt; (V) state claim for false arrest/imprisonment against the City; (VI) state claim for false arrest/imprisonment against Officer Hildebrandt; (VII) excessive use of force against the City; (VIII) state claim for battery/unnecessary use of force against Officer Hildebrandt; (IX) malicious prosecution against Officer Hildebrandt; (X) violation of 42 U.S.C. § 1983 against Officer Hildebrandt for "initiation and pursuit of prosecution without probable cause." *Id.* ¶¶ 116-18. The Complaint indicates that Officer Hildebrandt "is being sued in her individual and official capacities." *Id.* ¶ 19.

---

[1] Plaintiff alleges that conviction for nonviolent resistance of an officer requires proof that the officer was engaged in the performance of a lawful duty – and, here the officer was not so engaged. *Id.* ¶ 49.

Officer Hildebrandt's Motion seeks dismissal of all claims asserted against her in her official capacity.  At the same time, the City argues that Counts I and II fail to state plausible claims for relief.  The Court will address each Motion in turn.

## II.  Legal Standard

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002).  Although the Court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions.  *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss . . . the court limits its

4

consideration to the pleadings and all exhibits attached thereto.")   (internal quotation marks omitted).   In the Rule 12(b)(6) context, a plaintiff's pleadings should be read as a whole.   *See Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1383 (11th Cir. 2010) (interpreting specific language in complaint within the context of the entire complaint); *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1252 n. 11 (11th Cir. 2005) (stating that, in a Rule 12(b)(6) context, "[w]e read the complaint as a whole").   "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"   *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).   Through this lens, the Court addresses the instant Motions.

### III. Discussion

Both Defendants, as noted, have filed Motions to Dismiss in this action.   The City requests dismissal of only Counts I and II, arguing that Count I misstates the law, and Count II is insufficiently plead.   Officer Hildebrandt, on the other hand, seeks dismissal of all counts asserted against her in her official capacity, namely Counts I, III, IV, VI, VIII, IX, and X, "because they improperly co-mingle official capacity claims, which are duplicative of the municipal claims against the City, with individual capacity claims."   Hildebrandt Mot. at 1. Plaintiff opposes the requested relief, arguing that he has "presented sufficient facts that are non-conclusory [and that] establish a plausible claim for relief."   ECF No. [20] (Response to Hildebrandt Mot.) at 4; *see* ECF No. [19] (Response to City Mot.).   The Court disagrees.

### A.  The City's Motion

Though the City seeks to dismiss Counts I and II, Count I seeks relief only against Officer Hildebrandt.   *See* Compl. ¶ 72 ("Plaintiff prays this Court assess compensatory damages

against the Defendant HILDEBRANDT, in excess of Seventy Five Thousand ($75,000.00) Dollars together with reasonable attorney['s] fees and costs as provided in 42 U.S.C. § 1988."). To the extent that Plaintiff does intend to hold the City liable for all claims against Officer Hildebrandt, pursuant to Count I or otherwise,[2] "[i]t is well established in this circuit that supervisory officials are not liable under *Bivens* for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)) (alterations adopted). Instead, supervisory liability under § 1983 occurs either when a supervisor personally participates in the alleged unconstitutional conduct or when there is a "causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).[3] Accordingly, the City's Motion, to the extent applicable, is granted as to Count I.

In Count II of the Complaint, Plaintiff seeks to hold the City liable for deprivation of his civil rights, pursuant to 42 U.S.C. § 1983, seemingly on a failure to train theory.[4] Specifically, Willis alleges that his constitutional rights pursuant to the 14th Amendment were violated by

---

[2] The Complaint states as follows: "At all times material hereto, HILDEBRANDT was acting within the course and scope of her employment as a police officer with the City's Police Department. As a consequence thereof, CITY is liable as hereinafter alleged under the Doctrine of Respondeat Superior." *Id.* ¶¶ 14-15, 17, 71, 76.

[3] Accordingly, "to state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." *Barr v. Gee*, 437 F. App'x 865, 875-76 (11th Cir. 2011). A supervisor cannot be held liable under § 1983 for mere negligence in the training or supervision of his employees. *Greason v. Kemp*, 891 F.2d 829, 836-37 (11th Cir. 1990).

[4] To the extent that Plaintiff also seeks to plead a policy claim, he has alleged no such facts that would enable the Court's analysis in that regard.

Hildebrandt as a result of the City's failure to "adequately train and supervise" their police officers.   Compl. ¶¶ 74-79.   Any person acting under color of state law who violates a constitutional right of another is liable for the injured party's losses.  *See* 42 U.S.C. § 1983. "Section 1983 provides a fault-based analysis for imposing municipal liability; therefore, plaintiffs must establish that the city was the person who caused them to be subjected to their deprivation."  *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986).  "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury th[en] the government as an entity is responsible under § 1983."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  "A plaintiff . . . has two methods by which to establish a [municipal actor's] policy: identify either (1) an officially promulgated [ ] policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the [municipal actor]."  *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).  "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice[; h]owever, the custom need not receive formal approval."  *Depew*, 787 F.2d at 1499 ("Random or isolated incidents are insufficient to establish a custom or policy."); *see also Smith v. Mercer*, 572 F. App'x 676, 679 (11th Cir. 2014) ("A plaintiff must identify a 'consistent and widespread practice' of constitutional deprivations to prove local government liability for an unofficial custom."); *Carter v. Columbus Consol. Gov't*, 559 F. App'x 880, 881 (11th Cir. March 18, 2014) ("[T]he challenged practice or custom must be 'so pervasive as to be the functional equivalent of a formal policy'") (quoting *Grech*, 335 F.3d at 1330 n. 6).

　　"In addition, . . . a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes

these actions or displays deliberate indifference' towards the misconduct." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (citing *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)); *see Piccirillo v. City of Pembroke Pines*, No. 15-CV-62378, 2016 WL 1028333, at *6 (S.D. Fla. Mar. 15, 2016); *Canton v. Harris*, 489 U.S. 378, 388 (1989) (rejecting city's argument that municipal liability can be imposed only where the challenged policy itself is unconstitutional, and finding that "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983"). That is, "a Section 1983 claim for inadequate training exists only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Riley v. Newton*, 94 F.3d 632, 638 (11th Cir. 1996) (quotation omitted); *see also Canton*, 489 U.S. at 389 ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."); *Gold v. City of Miami*, 151 F.3d 1346, 1350-51 (11th Cir. 1998) ("[A]n allegation of failure to train or supervise can be the basis for liability under § 1983 . . . only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights.").

"Deliberate indifference can be established in two ways: by showing a widespread pattern of similar constitutional violations by untrained employees or by showing that the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation." *Mingo v. City of Mobile, Ala.*, -- F. App'x --, 2014 WL 6435116, at *6 (11th Cir. Nov. 18, 2014) (citing *Connick v. Thompson*, -- U.S. --, 131 S. Ct. 1350, 1360 (2011); *Gold*, 151 F.3d at 1350-52). "To establish a city's deliberate indifference, 'a plaintiff must

present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.'" *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009) (quoting *Gold*, 151 F.3d at 1350). "Prior incidents also must involve facts substantially similar to those at hand in order to be relevant to a deliberate-indifference claim." *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005)).

Here, Plaintiff alleges that the City failed to provide sufficient training to or supervision of Hildebrandt as the basis for its *Monell* action against the City:

> Defendant CITY OF CORAL SPRINGS, as policy making officials have continually failed to establish appropriate police procedures and train not only other police personnel, but in this instance, specifically Officer HILDEBRANDT: a. to prevent unconstitutional deprivations by HILDEBRANDT of the right to and privilege to WILLIS to be secure in his person while in custody of the State of Florida; b. to prevent unconstitutional deprivations by HILDEBRANDT, of the right and privilege of WILLIS not to be deprived of his rights and liberty without due process of law; c. to prevent unconstitutional deprivations by HILDEBRANDT, of the right and privilege of WILLIS not to be subject to punishment without due process of law; d. to prevent unconstitutional deprivations by HILDEBRANDT, of the right and privilege of WILLIS to be free from cruel and unusual punishment; e. employing other deputies/police officers as well as HILDEBRANDT whose employment in law enforcement presented an unreasonable risk of harm to persons including WILLIS; f. failing to guard against a potential hazard to members of the public by not selecting proper or competent police officers/deputies; g. Failing to provide proper guidelines and regulations concerning the proper use of weapons or force during an arrest. These deprivations are continuing and systemic in nature and not merely an isolated incident sufficient to create a formal custom or policy of the CITY OF CORAL SPRINGS. Moreover, Defendant CITY OF CORAL SPRINGS knew or should have known of these continuing deprivations of civil rights and knew or should have known of these actual and potential problems and has failed to take the adequate and necessary steps to correct or prevent them. Thus, Defendant CITY OF CORAL SPRINGS has failed to exercise its duties and supervise the institution under its control.

Compl. ¶¶ 76-78. Nowhere in this long list, however, does Willis state any fact in support of the City's alleged training deficiencies or identify any inadequate training procedure. *See* City Mot.

at 2-3.  Instead, he simply sets forth general conclusions that this incident must have been the result of inadequate procedures and training, without allegations of specific facts setting forth: (1) the nature of any inadequate policies or procedures; (2) the factual basis – other than that this incident occurred – for concluding that the City's training is contrary to law; (3) the identity of any prior incidents which would have placed the City on notice of any policy or training deficiencies; and/or (4) the factual basis underlying assertions that the City employed incompetent officers.  Indeed, conspicuously absent from the Complaint are fact allegations relating to anything other than the events of April 29, 2013.  Such wholly unsupported conclusions that the City failed to establish appropriate police procedures and train police personnel accordingly, particularly in a state with a liberal public records law, are plainly insufficient.  *See, e.g.*, *Larosa v. City of Sweetwater*, -- F. Supp. 3d --, 2014 WL 235449, at *2 (S.D. Fla. Jan. 22, 2014) (dismissing complaint which "offer[ed] no factual allegations other than [plaintiff's] own arrest and the circumstances surrounding that arrest" to substantiate allegations of a policy or custom); *Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1327-28 (S.D. Fla. 2015) (dismissing federal failure to train claims because "the facts alleged simply do not plausibly give rise to the inference that a final policymaker for the County made a 'decision not to train the officer[,]' or that it was obvious that their failure to do so would result in a constitutional deprivation").

Finally, Plaintiff's Complaint is rife with misplaced allegations that his substantive due process rights were violated by Officer Hildebrandt.  Compl. ¶¶ 67-79.  The first task in a federal claim for money damages is "to isolate the precise constitutional violation with which [the defendant] is charged."  *Baker v. McCollan*, 443 U.S. 137, 140 (1979).  "If an Amendment provides an explicit textual source of constitutional protection against the sort of conduct

10

complained of, then that Amendment – not the more generalized notion of substantive due process under the Fourteenth Amendment – is the guide for analyzing the claim." *Jordan v. Mosley*, 298 F. App'x 803, 805 (11th Cir. 2008). Although the legal basis advanced for Count II is a violation of Fourteenth Amendment due process, claims of pretrial deprivations of liberty are addressed in the Fourth Amendment, which provides the explicit textual source for protection of these rights. *See Albright v. Oliver*, 510 U.S. 266, 273-74 (1994); *Wood v. Kesler*, 323 F.3d 872, 881-82 (11th Cir. 2003) (holding that malicious prosecution is a violation of the Fourth Amendment, as malicious prosecution arises out of the Fourth Amendment right to be free from unreasonable seizures); *Whiting v. Traylor*, 85 F.3d 581, 586 (11th Cir. 1996) ("A section 1983 plaintiff must always base his claim on the violation of a specific federal right."); *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citing *Tennessee v. Garner*, supra, 471 U.S. 1, 7-22 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard)). Consequently, Count II must be dismissed for this additional deficiency, that is, failure to state a section 1983 claim upon which relief can be granted as a matter of law.

### B.  Officer Hildebrandt's Motion

Likewise, Count I, alleging violation of 42 U.S.C. § 1983 against Officer Hildebrandt, must be dismissed for the same reason. In Count I of the Complaint, Willis references various rights and privileges that he was denied as result of Officer Hildebrandt's actions:

> HILDEBRANDT did unlawfully and wrongfully assault, batter, injure, and arrest Plaintiff  WILLIS, thereby depriving him of his rights, privileges and immunities secured by the Constitution and laws of the United States. The assault, battery and use of excessive and/or illegal , [sic] unnecessary force used by Defendant HILDEBRANDT operated to deprive Plaintiff of the following Constitutionally guaranteed rights and privileges:  a. The right and privilege to be secure in his person while in the custody of the State of Florida; b. The right and privilege not to be deprived of his right and liberty without due process of law; c. The right and privilege to be free from unlawful attacks upon the physical integrity of his person; d. The right and privilege not to be subjected to punishment without due

process of law; e. The right and privilege to be immune while in the custody of persons acting under color of law of the State of Florida from illegal assault and battery by any person exercising the authority of said state; and f. The right and privilege to be free from cruel and unusual punishment.

¶¶ 70.   However, all of Willis' claims arise from an alleged improper use of force during the course of an arrest.  Compl. ¶¶ 67-72.  The Eleventh Circuit does not recognize a cause of action under the Fourteenth Amendment for an unlawful arrest or use of force during the course of that arrest.  *See Pozdol v. City of Miami*, 996 F. Supp. 2d 1290, 1295 (S.D. Fla. 2014) (citing *Graham*, 490 U.S. at 388); *W. v. Davis*, 767 F.3d 1063, 1070 (11th Cir. 2014) (any excessive force used during the course of a seizure is analyzed under the Fourth Amendment, not the substantive due process clause of the Fourteenth Amendment); *see also Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1326 n. 19 (11th Cir. 2015) (summarily rejecting claims that officer violated any other constitutional amendment besides the Fourth Amendment because "the only constitutional provision under which [plaintiff] could possibly prevail on a claim of excessive force is the Fourth Amendment.").   As a result, Count I cannot withstand Officer Hildebrandt's Motion.

Defendant further seeks dismissal of Counts III, IV, VI, VIII, IX, and X – as asserted against her in her official capacity – as redundant.  *See* Hildebrandt Mot. at 1.  Indeed, when an officer is sued under section 1983 in her official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents."  *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).  Thus, "[b]ecause suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official capacity actions against local government officials, because local government units

12

can be sued directly." *Id.* Plaintiff's section 1983 claim against Officer Hildebrandt in her official capacity, therefore, is also subject to dismissal as it is redundant of the same claim asserted against the City. *See Busby*, 931 F.2d at 776 (affirming district court's dismissal of the Plaintiff's claims against the Defendants in their official capacity because to keep both the city and the officers would have been redundant and possibly confusing to the jury). Curiously, although Willis asserts that he is suing Officer Hildebrandt in her official and individual capacities, Compl. ¶ 19, he nevertheless indicates in his Response that he intends to proceed against Officer Hildebrandt in her individual capacity only. *See* Resp. to Hildebrandt Mot. at 3. Regardless, to the extent that Plaintiff alleges any claims against Officer Hildebrandt in her official capacity, those claims are dismissed.

## IV. Conclusion

For all of these reasons, dismissal of Counts I, II, III, IV, VI, VIII, IX, and X, against the City and Officer Hildebrandt, in her official capacity only, is warranted. Of these claims, all but Count II fail as a matter of law and, thus, amendment would be futile. Count II, on the other hand, fails due to pleading insufficiently. Of course, "[a] district court, before dismissing a complaint with prejudice because of a mere pleading defect, ordinarily must give a plaintiff one opportunity to amend the complaint and to cure the pleading defect." *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1239 (11th Cir. 2000) (citing *Isbrandtsen Marine Servs., Inc. v. M/V INAGUA Tania*, 93 F.3d 728, 734 (11th Cir. 1996)). Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motions to Dismiss, **ECF Nos. [5], [11]**, are **GRANTED**.

2. Count I is DISMISSED with prejudice.

Case No. 16-cv-60959-BLOOM/Valle

3. Count II fails to properly allege a section 1983 cause of action based on a failure to train theory.   Plaintiff shall file an Amended Complaint addressing this deficiency **no later than July 25, 2016**.[5]

4. Counts III, IV, VI, VIII, IX, and X as asserted against Officer Hildebrandt *in her official capacity* are DISMISSED with prejudice.

5. Officer Hildebrandt shall answer or otherwise respond to these counts in the Complaint, *as asserted against her individually*, **no later than July 22, 2016**.

**DONE AND ORDERED** in Miami, Florida, this 11th day of July, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[5] Once the Amended Complaint is filed, the City will be required to respond to Counts II, V, and VII.

14